UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RAYMOND ANNIN,<br><br>    Petitioner<br><br>v.<br><br>MARION SPEARMAN, Warden,[1]<br><br>    Respondent. | Case No: C 06-7273 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

The parties are presently before the Court on Petitioner Raymond Annin's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, a sex offender, seeks to challenge his conviction in the San Mateo County Superior Court under California Penal Code § 290(f) for failing to notify the requisite law enforcement agency that he had moved to Oregon. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

**I.     BACKGROUND**

    **A.     STATEMENT OF FACTS**

The following facts are taken from the opinion of the California Court of Appeal.[2] On November 8, 1998, Petitioner was released on parole and initially registered as a sex offender in Redwood City on November 10, 1998. His last registration was on August 26, 1999. During that time period, he filed ten forms in Redwood City to report a change of

---

[1] Marion Spearman, the current warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The opinion is published as People v. Annin, 117 Cal. App. 4th 591 (2004).

address, or that he was within the jurisdiction as a transient, meaning that he had no address. On three occasions, the form he filed indicated that he was a transient.

In March of 1999, Petitioner's case was transferred to Steve McCoin, a parole agent with the California Department of Corrections in Redwood City. McCoin met with Petitioner every month to review his obligations as a parolee, including the sex registration requirements pursuant to section 290 of the Penal Code. McCoin informed appellant that the failure to comply with registration requirements would constitute a parole violation.

On August 25, 1999, McCoin met with Petitioner at his office. Petitioner stated that he was about to become homeless, and they discussed the possibility of appellant obtaining another voucher for housing at the Garden Motel in Redwood City. McCoin advised Petitioner that he would have to "re-register" to disclose his new address or location with the Redwood City Police Department if he changed his address. Petitioner indicated that he understood this obligation.

On August 31, 1999, McCoin made a routine unannounced visit on Petitioner at the Garden Motel, where they again discussed the fact that Petitioner was soon going to be homeless. In response to McCoin's directions, Petitioner came to his office on September 1, 1999, and reported that he was now homeless. McCoin told Petitioner that he could not provide him with a housing voucher for that week, and that he should meet with McCoin again on September 8, 1999, to discuss the possibility of a voucher or loan. He also reminded appellant that he would have to notify the Redwood City police that he was now homeless. Appellant did not report to the September 8, 1999 appointment, and a week later McCoin requested that a warrant issue for appellant as a parolee-at-large.

> The manager of the Garden Motel testified that the records showed that appellant stayed in the Garden Motel from July 14 through July 20, 1999, and again from August 25 to August 31, 1999. Both times he paid with a voucher. The records also showed that he did not stay at the motel after August 31, 1999.
>
> A Redwood City Police Department detective testified that he was the custodian of the sex-offender records. The records showed that appellant had registered, or notified of a

2

change of address 10 times. In December of 1998, appellant registered at an apartment building on Linden, and judging from the date of his next notification of change of address, he continued to live there until July 7, 1999. On three occasions appellant notified the department that he had changed his address and was "transient." One of these occasions was on August 20, 1999. On August 26, 1999, appellant filed his last notification of a change of address, which he gave as the Garden Motel, room 8.

On August 26, 1999, when appellant filed this last registration form notifying the police of his change of address, appellant also signed a statement acknowledging that he had been notified of his duty to register as a convicted sex offender under section 290. He placed his initials in a box acknowledging that he read the admonition: "If I move out of California, I am required to register in any state in which I am located or reside, within 10 days, with the law enforcement agency having jurisdiction over my residence or location." He also specifically acknowledged having read the admonition: "When changing my residence address, either within California or out of state, I must inform the registering agency with which I last registered, of the new address . . . as a sex offender within five working days."

In October 1999, Officer Garcia, who had processed appellant's August 26 registration form, noticed that appellant had failed to register in October, within five days of his birthday. Appellant's parole agent informed Garcia that appellant was also in violation of his parole, and that his whereabouts were unknown. Garcia checked the state registration system and discovered that appellant had not registered anywhere else. Garcia also identified a fingerprint card dated November 10, 1998, signed by appellant, acknowledging the following: "I understand my requirement as stated in the appropriate code sections. [¶] When registering pursuant to 290 PC, my requirement to register is for life and I must, within five working days, register with the agency having jurisdiction over my residence address. Notify the last registering agency when I leave their jurisdiction and report any name change to the registering agency. [¶] Annually, within five working days of my birthday, I must update my registration address, name, and vehicle information. [¶] . . . [¶] If I am designated either a sexually violent predator, or transient, or homeless, I must update my registration at least once every 90 days, and annually within five working days of my birthday."

Garcia also identified a notice of registration requirement dated May 22, 1998, signed by appellant, and containing his thumbprint. Garcia testified that this card is explained to prisoners when they are released from custody. It

summarized the requirements of section 290 and listed registration dates for appellant, with more detailed summaries of the registration information for each date.

In January 2001, appellant's parole agent notified Garcia that appellant had been arrested in Portland, Oregon. Officer Garcia and a [sic] Detective Dolezal went to interview appellant at San Quentin. Appellant admitted that he signed the August 26, 1999 registration form, and initialed all the registration requirements on the form. When Garcia asked appellant why he left California, appellant stated that he was tired of California, and used his social security check to buy a bus ticket to Portland, leaving around September 7 or 8, 1999. He stayed there for 14 months. When asked why he did not register before he left, appellant stated that he knew if he told the police department that he was moving to Oregon, they would contact his parole agent to "verify that [it] was okay . . . and he knew it wasn't okay, and he would be violated and arrested." Appellant told Garcia he thought about informing the Redwood City Police Department, but knew if he did so, he would be arrested. A recording of the interview was played for the jury. In the interview, when Garcia asked appellant whether ". . . [he was] aware that by leaving, that [he was] . . . violating . . . the 290 requirement" appellant responded, "I knew that I was violating my parole[,] yes." Appellant also told Garcia, "[T]here's really no good reason why I didn't report and let you know. There's really . . . no excuse . . . . There's no excuse for what I did."

Appellant testified that when he was paroled into Redwood City in 1998, he understood the registration requirements that applied to him, and that there was "no mistake" in his mind "whatsoever." When he was first released he used a voucher to live at the Garden Motel. When the time ran out on the voucher, he lived on the street as a transient. He also shared an apartment on Linden for several months, but had to move because it became overcrowded, and he could not afford it. Every time he became homeless he would "go down and register" with the Redwood City Police Department. He was not qualified to stay in homeless shelters because of his record as a sex offender. When defense counsel asked, "[W]hat is it that [led] you to think that you had to leave without registering?" appellant explained that he "had no choice." He knew he would not have to live on the street in Portland because the cost of living was lower, and he had friends and family there. His parole officer had told him it would be impossible to serve his parole in Oregon. He therefore felt that he had to "just leave without notifying the police." Appellant acknowledged that he understood everything on the registration form he filed with the Redwood City Police Department in August of 1999, and that he "knew that by going to Oregon, [he] would be out of compliance with

4

> [his] registration," but "went anyway." On cross-examination, appellant stated that once he got to Oregon he did not stay with family. Instead, he stayed with friends, "kids I went to school with," and stayed in Oregon for 14 months. When the district attorney reminded him that he had told Officer Dolezal that he stayed in motels, appellant explained that he did not want to involve his friends. He did stay in motels when he first arrived, and when he had money.

Answer, Ex. 2 at 2-6.

### B.    CASE HISTORY

In 2001, Petitioner, a sex offender, was convicted of failing to inform law enforcement of his new address or location in violation of California Penal Code § 290(f)(1).[3] Answer, Ex. 1, Clerk's Transcript ("CT") 61, 98. The San Mateo County Superior Court found true allegations that Petitioner had four prior convictions qualifying as strikes under California's Three Strikes Law, and also found true an enhancement based on a prior prison term. CT 62.

On April 19, 2002, the court denied Petitioner's motion to strike one or more of the prior convictions qualifying as strikes, and sentenced him to a term of twenty-five years to life, plus one year for the enhancement. CT 283-286; Answer, Ex. 15, Reporter's Transcript ("RT") 202-203.

Petitioner thereafter appealed his conviction to the California Court of Appeal, raising ten claims. Answer, Ex. 1.

On December 12, 2003, Petitioner also filed a state habeas petition in the state appellate court presenting numerous claims, including two of the ineffective assistance of

---

[3] In 1999, California Penal Code § 290(f)(1) provided, in relevant part:

> If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location.

5

counsel claims ("IAC claims") raised in the instant action. Dkt. 28 at 4.[4]

On March 4, 2004, the California Court of Appeal denied the state habeas petition in a summary denial. In re Raymond Annin on Habeas Corpus, No. A104846, Dkt. 28-1 at 36. On the same date, the California Court of Appeal, on direct appeal, affirmed the judgment and issued a reasoned opinion in People v. Annin, No. A099237. Answer, Ex. 2. The state appellate court subsequently modified the opinion and denied Petitioner's petition for rehearing. Answer, Ex. 3.

On or about April 15, 2004, Petitioner attempted to file a petition for review in the California Supreme Court, in which he presented five of the claims raised in the instant action. Answer, Ex. 4. The California Supreme Court refused to file the petition on the ground that it was untimely. Answer, Exs. 5, 6. The next day, Petitioner's appellate attorney, Richard Such, Esq., filed an application for relief from default in the California Supreme Court, which denied the application on April 20, 2004. Id.; Answer, Ex. 7. Attorney Such also filed a Motion to Reinstate Appeal and Refile Opinion in the state appellate court; however, it was denied on June 10, 2004. Answer, Exs. 8, 9.

On April 28, 2004, Petitioner requested that the California Supreme Court grant review on its own motion; however, the request was denied on May 19, 2004. Answer, Exs. 5, 6.

On May 7, 2004, Petitioner filed a state habeas petition in the California Supreme Court, presenting three of the claims raised in the instant action (two IAC claims as to trial counsel and another IAC claim as to appellate counsel). Answer, Ex. 10. On August 31, 2005, the state supreme court issued a summary denial. Answer, Ex. 11.

On November 27, 2006, Petitioner filed a federal habeas petition in this Court raising eight claims. Dkt. 1.[5] On March 31, 2008, the Court granted Respondent's motion

---

[4] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Petitioner.

[5] The action was originally assigned to the Honorable Jeremy Fogel.

to dismiss, finding that five of his eight claims were unexhausted because they were not considered on the merits by the California Supreme Court. Dkt. 8.

On March 30, 2009, the Court granted Petitioner's request for a stay of the habeas proceedings pending his efforts to exhaust his claims in state court. Dkt. 20.

Thereafter, Petitioner filed a second state habeas petition in the California Supreme Court, raising the five claims this Court found to be unexhausted. Answer, Ex. 13.

On March 30, 2010, the California Supreme Court denied Petitioner's second state habeas petition as untimely, citing In re Robbins, 18 Cal. 4th 770, 780 (1998), and In re Clark, 5 Cal. 4th 750 (1993). Answer, Ex. 14.

On June 17, 2010, Petitioner filed his amended petition alleging eight claims, which include the five newly-exhausted claims. Dkt. 28. Specifically, he alleges that:

(1)  trial counsel provided ineffective assistance of counsel by failing to move for a judgment of acquittal;

(2)  trial counsel was ineffective for failing to advise him not to testify;

(3)  his due process rights were violated because there was insufficient evidence that he had a new residence address of which to inform the authorities;

(4)  his due process rights were violated because "location" as used in former California Penal Code § 290(f)(1) is unconstitutionally vague;

(5A)  there was insufficient evidence that he had "actual knowledge" of the registration requirement;

(5B)  his due process rights were violated by a complete failure of trial court to instruct the jury as to the "actual knowledge" element of a violation of former California Penal Code § 290 and the court's instructing, to the contrary, that "ignorance of the law is no excuse";

(6)  trial counsel was ineffective for failing to argue insufficiency of the evidence that Petitioner had a residence or regular "location";

(7)  a prison term of 25 years to life under the Three Strikes Law is cruel and unusual punishment; and

(8)     appellate counsel provided ineffective assistance of counsel by failing to file a timely petition for review. Dkt. 28 at 8-11.

On May 24, 2011, the Court lifted the stay because Petitioner had filed the aforementioned amended petition, and issued an Order to Show Cause. Dkt. 30.

On November 21, 2011, Respondent filed an answer. Dkt. 35. Petitioner did not file a traverse.

## II.    LEGAL STANDARD

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless: (1) the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

For purposes of AEDPA review, a federal court generally looks to the last reasoned decision of the state court. Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. Plascencia v. Alameida, 467 F.3d 1190, 1197-98 (9th Cir. 2006); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Here, Petitioner presented his eight federal claims to the California Supreme Court in two separate state habeas petitions. Petitioner presented Claims 1, 2 and 8 in his first state habeas petition, which the California Supreme Court summarily denied. Answer, Ex. 11. As such, these IAC claims may be reviewed independently by this Court to determine whether that decision was an objectively unreasonable application of clearly established federal law. See id. However, Petitioner presented the five remaining claims (Claims 3

8

through 7) in his second state habeas petition, which was rejected by the California Supreme Court as untimely, with citations to In re Robbins and In re Clark. Answer, Ex. 14. The Court will first consider below whether the five claims presented in the second state habeas petition are procedurally defaulted from federal habeas review.

### III.  CLAIMS

#### A.  PROCEDURALLY DEFAULTED CLAIMS (CLAIMS 3 THROUGH 7)

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 728 (1991). Thus, where a state court's rejection of a claim rests upon an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-05 (9th Cir. 1993).

Here, Petitioner presented Claims 3 through 7 in his second state habeas petition, which was rejected by the California Supreme Court with citations to In re Robbins and In re Clark. Answer, Ex. 14. "A summary denial citing In re Robbins and In re Clark means that the petition is rejected as untimely." Walker v. Martin, — U.S. —, —, 131 S. Ct. 1120, 1126 (2011). The denial of habeas relief by the California Supreme Court on the ground that the application for relief was filed untimely is an independent and adequate state procedural ground requiring denial of subsequent habeas petitions in federal court. Id. Here, Petitioner has demonstrated neither cause and prejudice nor that the failure to consider his claims will result in a fundamental miscarriage of justice. Accordingly, the Court finds that Claims 3 through 7 are procedurally defaulted for purposes of federal habeas review.

#### B.  REMAINING NON-DEFAULTED IAC CLAIMS

9

### 1. Trial Counsel (Claims 1 and 2)

An IAC claim under the Sixth Amendment is reviewed under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To satisfy the second prong under Strickland, petitioner must establish that he was prejudiced by counsel's substandard performance. See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694).

Under AEDPA, a federal court is not to exercise its independent judgment in assessing whether the state court decision applied the Strickland standard correctly; rather, the petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cullen v. Pinholster, — U.S. —, 131 S. Ct. 1388, 1403 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."). The Supreme Court has specifically warned that: "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *there is any reasonable argument* that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 789 (2011) (emphasis added).

#### *a) Claim 1*

In Claim 1, Petitioner contends trial counsel was ineffective for (1) failing to move for a judgment of acquittal at the conclusion of the prosecution's case; and (2) advising him to testify that he stayed in motels and with friends in Oregon. Dkt. 28 at 8. Upon

independent review, the Court finds that the state court's summary denial of this claim was not objectively unreasonable.

"To show prejudice under Strickland from failure to file a motion, [Petitioner] must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999). Under California Law, a motion for judgment of acquittal on "one or more of the offenses charged in the accusatory pleading" shall be granted "if the evidence . . . before the court is insufficient to sustain a conviction of such offense or offenses on appeal." Cal. Pen. Code § 1118.1. "A trial court should deny a motion for acquittal under section 1118.1 when there is any substantial evidence, including all reasonable inferences to be drawn from the evidence, of the existence of each element of the offense charged." People v. Mendoza, 24 Cal.4th 130, 175 (2000); see Jackson v. Virginia, 443 U.S. 307, 319, 324 (1979) ("the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction [is] . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").

Petitioner contends that the prosecution failed to present evidence that he had a *new address or location*, which is a necessary showing to sustain a conviction under Penal Code § 290(f)(1). Petitioner asserts that trial counsel should have made a motion for acquittal on that basis when the prosecution rested. He posits that since there was no specific evidence presented regarding a new address, his trial counsel should have argued that no rational trier of fact could find him guilty beyond a reasonable doubt of violating § 290(f)(1). Instead, Petitioner claims that trial counsel advised him to testify as to his new address, i.e., that he stayed in motels and with friends in Oregon. Thus, Petitioner claims that not only was his counsel ineffective for failing to move for judgment of acquittal, but also for advising him to—in essence—supply the key evidence missing from the prosecution's case.

11

Despite Petitioner's claim to the contrary, the record confirms that there was sufficient evidence presented by the prosecution to sustain a conviction under § 290(f)(1). Specifically, the prosecution presented evidence that Petitioner had been living in Oregon for fourteen months. A tape-recorded interview of Petitioner by officers at San Quentin State Prison upon his return to California from Oregon was presented to the jury. CT 179-183. In the course of the interview, Petitioner admitted his guilt and informed the police (1) that he had absconded to Oregon and lived there for fourteen months; and (2) that he had no legitimate reason for not reporting to the police. CT 181-183. In addition, other prosecution witnesses testified that Petitioner last registered with the Redwood City Police Department on August 26, 1999, and at that time he gave his address as the Garden Hotel. RT 66, 96. The evidence established that Petitioner had not resided at the Garden Hotel since August 31, 1999, RT 67, and that he thereafter failed to provide any notice to the Redwood City Police that he was no longer living at the Garden Motel, or any other information regarding his whereabouts, RT 97-98.

The evidence presented in the prosecution's case-in-chief established that Petitioner admitted to have knowingly violated the provisions of California Penal Code § 290(f)(1) by moving from his Redwood City address to Oregon for a period of fourteen months without notifying the local authorities of his whereabouts. Because the prosecution presented sufficient evidence to sustain a conviction under § 290(f)(1), the Court is not persuaded that the trial court would have granted a motion for a judgment of acquittal had trial counsel moved to do so. Therefore, trial counsel was not ineffective for failing to make a futile motion, and Petitioner was not prejudiced by trial counsel's actions. See Wilson, 185 F.3d at 990 (no prejudice under Strickland if not reasonable to believe that court would have granted motion); Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel cannot have been ineffective for failing to raise a meritless motion).

Likewise, Petitioner has not demonstrated that his counsel was ineffective for advising him to testify that he stayed in motels and with friends in Oregon. In view of the significant evidence to sustain a conviction, it is unlikely that the outcome of trial would

12

have been different had Petitioner not offered that testimony. See Strickland, 466 U.S. at 686. Based on Petitioner's extended stay in Oregon, a jury could have reasonably inferred that Petitioner was living at a new address. As noted, prosecution witnesses testified that Petitioner failed to notify authorities for fourteen months after moving from his last residence, and the jury heard the tape-recorded interview of Petitioner admitting that he absconded to Oregon during that fourteen-month period.[6] Thus, even if Petitioner had not testified as to where he stayed in Oregon, there was sufficient evidence to sustain a conviction under California Penal Code § 290(f)(1).

Accordingly, the state supreme court's summary rejection of Claim 1 on collateral review was not an objectively unreasonable application of the Strickland standard. The Court therefore finds that there is a "reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 789. Petitioner is not entitled to relief on his claim relating to defense counsel failing to move for judgment of acquittal and advising Petitioner to testify that he stayed at motels and with family in Oregon (Claim 1). Relief on this claim is DENIED.

### b) Claim 2

In Claim 2, Petitioner alleges that trial counsel was ineffective for advising him to testify. Dkt. 28 at 8. He argues that "[n]o element of the prosecution's case was rebutted and no defense to the charge was shown by [his] testimony" and that a "reasonably competent attorney would have advised [him] not to testify." Id. at 37.

A trial attorney has wide discretion in making tactical decisions. See Correll v. Stewart, 137 F.3d 1404, 1411-12 (9th Cir. 1998); Turk v. White, 116 F.3d 1264, 1267 (9th Cir. 1997). Tactical decisions of trial counsel are entitled to deference where counsel has conducted a reasonable investigation enabling him to make informed decisions about how

---

[6] Notably, in its March 4, 2004 reasoned opinion, the California Court of Appeal stated that a trier of fact could reasonably infer that a fourteen month stay in Oregon was more than a "trip" or a "transient visit." Answer, Ex. 2 at 9-10. The court concluded that a jury could reasonably infer that Petitioner regularly returned to one or more addresses during his 14-month stay in Oregon. Id. at 10.

1     best to represent his client, or has made a showing of strategic reasons for failing to do so.
2     See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).
3            In the instant case, the Court is unpersuaded that defense counsel provided
4     ineffective assistance by advising Petitioner to testify at trial. First, it was undisputed that
5     Petitioner moved from Redwood City, California, to Oregon, and that he did not report a
6     new address for fourteen months. Trial counsel, as a tactical matter, could reasonably have
7     concluded that even if the prosecution failed to proffer evidence of a specific address
8     where Petitioner had stayed in Oregon, the jury could logically infer from the evidence that
9     Petitioner had secured a temporary address at some point during his fourteen months in
10    Oregon. Instead, trial counsel apparently decided to appeal to the conscience of the jury,
11    arguing in his closing that Petitioner had complied with the registration requirements for
12    an extended period of time, but that he could not afford to live in the Bay Area and was
13    forced to move to Oregon. RT 134-136.
14           Petitioner's trial counsel also was not ineffective by acknowledging his client's
15    guilt during his closing argument. See McDowell v. Calderon, 107 F.3d 1351, 1358 (9th
16    Cir.) (no ineffective assistance where counsel's decision at closing argument to concede
17    guilt of felony murder but instead argued that the defendant's intent to kill was "best
18    choice from a poor lot"), amended, 116 F.3d 364 (9th Cir.), vacated in part by 130 F.3d
19    833, 835 (9th Cir. 1997) (en banc); People v. Jackson, 28 Cal. 3d 264, 293 (1980) (counsel
20    who conceded defendant's guilt in closing argument was not incompetent in light of
21    overwhelming evidence of defendant's guilt), overruled on other grounds, People v.
22    Cromer, 24 Cal. 4th 889, 901 n.3 (2001). It was evident that trial counsel's strategy was
23    based on the belief that Petitioner's candid testimony could either lead to jury nullification
24    or would influence the trial court to grant a motion to strike some or all of the prior
25    convictions qualifying as strikes. Given the compelling evidence of Petitioner's guilt, trial
26    counsel's strategy to have Petitioner testify honestly was reasonable. Therefore, Petitioner
27    has failed to show that his trial counsel's representation fell below an objective standard of
28    reasonableness.

1          Accordingly, because trial counsel's decision to have Petitioner take the stand was a
2   reasonable tactical decision, the state supreme court's summary rejection of Claim 2 on
3   collateral review was not an objectively unreasonable application of the Strickland
4   standard.  Petitioner has not established trial counsel's incompetence nor has he shown that
5   the outcome of trial would have been different had he not testified.  Thus, the Court finds
6   that there is a "reasonable argument that counsel satisfied Strickland's deferential
7   standard."  Harrington, 131 S. Ct. at 789.  Petitioner is not entitled to relief on his IAC
8   claim relating to trial counsel advising him to testify (Claim 2), and this claim is DENIED.

### 2. Appellate Counsel (Claim 8)

Petitioner claims that he was denied the effective assistance of appellate counsel because Attorney Such filed an untimely—albeit by two days—petition for review with the California Supreme Court.  Answer, Ex. 5.  The Strickland standard applies to claims of ineffective assistance of appellate counsel.  Evitts v. Lucey, 469 U.S. 387 (1985).  A petitioner must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel.  Smith v. Robbins, 528 U.S. 259, 289 (2000).

There is no constitutional right to counsel for attempts to pursue discretionary state appeals, such as Petitioner's petition for review in the California Supreme Court.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (no right to counsel when pursuing discretionary state appeal); Ross v. Moffitt, 417 U.S. 600, 617-18 (1974) (no right to counsel for defendant seeking discretionary appeal in state supreme court).  Where no constitutional right to counsel exists, there can be no claim for ineffective assistance.  See Torna, 455 U.S. at 587-88 (1982) (holding that there is no right to counsel when pursuing a discretionary state appeal, and where no constitutional right to counsel exists, there can be no claim for ineffective assistance of counsel); accord Coleman, 501 U.S. at 757.  Since Petitioner had no right to counsel to file a petition for review with the California Supreme Court, he cannot state a claim for ineffective assistance of counsel.  Id.

15

1   Accordingly, the state supreme court's summary rejection of Claim 8 on collateral
2  review was not an objectively unreasonable application of the Strickland standard.
3  Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel
4  (Claim 8), and this claim is DENIED.

**IV.     CERTIFICATE OF APPEALABILITY**

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's Claims 1, 2 and 8 debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In addition, Petitioner has not shown that jurists of reason would find it debatable whether the Court was correct in its procedural ruling as to Claims 3 through 7.  Id.  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

**V.      CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     The Petition for Writ of Habeas Corpus is DENIED.  Specifically, Claims 1, 2 and 8 are DENIED on the merits.  Claims 3 through 7 are DISMISSED as procedurally defaulted.  No certificate of appealability shall be issued.

2.     The Clerk shall enter judgment, close the file, and terminate any pending matters.

IT IS SO ORDERED.

Dated: September 29, 2014

_SAUNDRA BROWN ARMSTRONG_
United States District Judge

P:\PRO-SE\SBA\HC.06\Annin7273.denyHCrev091914.docx